UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:13CV-00166-GNS-HBB

ROBERT A. SHARP, JR.                                                                         PLAINTIFF

V.

BEST BUY CO., INC.                                                                              DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment filed by Defendant Best Buy Co., Inc. ("Best Buy") (DN 17). Because the time to file a response has passed, this matter is ripe for a decision. For the reasons outlined below, the motion is **GRANTED**.

### I. STATEMENT OF FACTS AND CLAIMS

Plaintiff Robert A. Sharp, Jr. ("Sharp") was employed by Defendant Best Buy Co., Inc. ("Best Buy") in its Bowling Green, Kentucky, store as an auto technician in the vehicle install bay. (Sharp Dep. 41:18-20, Sept. 23, 2014, DN 17-2). While the position was initially part-time, Sharp eventually went to full-time status and was later promoted to the position of lead auto technician, which he held until the time of his termination. (Sharp Dep. 41:23-42:3, 42:16-18, 44:8-12). As an employee of Best Buy, Sharp was familiar with Best Buy's zero-tolerance sexual harassment policy and knew that engaging in sexual harassment was grounds for termination. (Sharp Dep. 169:11-22).

The record reflects that Sharp had been diagnosed as having narcolepsy and cataplexy. (Sharp Dep. 67:7-17). During his employment, Sharp presented a note dated June 14, 2012, from his treating physician requesting that Best Buy accommodate Sharp's disability by avoiding

1

shift work. (Def.'s Mot. for Summ. J. Ex. C, DN 17-4; Sharp Dep. 73:17-74:10). With the exception of one scheduling mistake, the uncontroverted record reflects that Best Buy provided the requested accommodation. (Sharp Dep. 73:8-16).

On June 13, 2013, Best Buy first became aware of alleged sexual harassment by Sharp when fellow employee Chloe Cesler ("Cesler") made a verbal complaint to a person named Monique[1] on the Human Resources Hotline. (Def.'s Mot. for Summ. J, Ex. G at 2, DN 17-8; Sharp Dep. 154:12-155:1; Crossland Decl. ¶ 5, DN 17-3). To follow up her verbal report, Cesler e-mailed Monique with additional details regarding incidents of sexual harassment perpetrated by Sharp, which included:

- On April 15, 2013, Cesler missed the appointment for an installation in her vehicle due to a dentist appointment. (Def.'s Mot. for Summ. J. Ex. G at 2, DN 17-8). According to Cesler, Sharp responded "Oh, you were late because you had a guy 6 inches down your throat?" (Def.'s Mot. for Summ. J. Ex. G at 2 (internal quotation marks omitted)). While doing the work on Cesler's vehicle, Sharp discovered a condom in the glove compartment. (Def.'s Mot. for Summ. J. Ex. G at 2). When Sharp returned the keys to her, he placed the keys and the condom into her pants pocket. (Def.'s Mot. for Summ. J. Ex. G at 2). While Cesler could not exactly recall Sharp's comment, she stated that he "insinuat[ed] that I frequently have sex because I had [a condom] in my car." (Def.'s Mot. for Summ. J. Ex. G at 2).

- When Cesler returned to work the weekend of May 17-18, 2013, after having her braces removed, she recalled a conversation in which Sharp "insinuated that

---

[1] Monique's full name does not appear to be disclosed in the record.

2

> because [she] didn't have braces anymore that [she] was giving blow jobs and 'deep throating' now." (Def.'s Mot. for Summ. J. Ex. G at 2).

- On June 10, 2013, Cesler assisted Sharp at the customer service desk. (Def.'s Mot. for Summ. J. Ex. G at 2). When she told him that she was coming to help him with the transaction, he responded with "I bet you're coming," which she believed was innuendo for sexual climax. (Def.'s Mot. for Summ. J. Ex. G at 2). She indicated that this had occurred on numerous occasions. (Def.'s Mot. for Summ. J. Ex. G at 2).

In her e-mail message, Cesler noted that many of those events had been observed by co-workers and that she was aware that other female employees had been subject to sexual harassment by Sharp. (Def.'s Mot. for Summ. J. Ex. G at 2, DN 17-8).

Monique investigated Cesler's complaint over a period of several weeks. (Crossland Decl. ¶¶ 6-8, DN 17-3). During the investigation, Monique spoke with other Best Buy employees or obtained written statements from them regarding Sharp's workplace misconduct. (Def.'s Mot. for Summ. J. Ex. H at 2-26, DN 17-9). Besides confirming Cesler's complaint, the co-workers conveyed information about other incidents of sexual harassment, which included:

- Sara Stinson reported that "comments [were] constantly made about someone's 'fine ass', 'gigantic boobs', etc." (Def.'s Mot. for Summ. J. Ex. H at 10).

- Misty Skaggs ("Skaggs") indicated that Sharp "had spoken before about if I needed to try on some clothes he would be a good judge. He has talked about me coming over to his house after work. He made comments about the way my clothe [sic] fit." (Def.'s Mot. for Summ. J. Ex. H at 11). Skaggs also recalled hearing Sharp comment about how Cesler's work shirts fit and her breasts.

3

(Def.'s Mot. for Summ. J. Ex. H at 11). Sharp "suggested [that he and Skaggs] find a quiet room somewhere." (Def.'s Mot. for Summ. J. Ex. H at 13).

- Jessica Blair ("Blair") told Monique that "every once in a while [Sharp] will come up to geek squad and whatever you say to him he would change it to something sexual." (Def.'s Mot. for Summ. J. Ex. H at 14). If she were playing with a ball at work, Sharp would ask Blair "what kind of balls are those, what size balls are they." (Def.'s Mot. for Summ. J. Ex. H at 14).

- Krista Ford ("Ford") stated that Sharp would make comments "about [her] pants and how they fit . . . her backside." (Def.'s Mot. for Summ. J. Ex. H at 17). Ford also mentioned that Sharp "made jokes about when it came to screwing in a screw; he made jokes about nailing things." (Def.'s Mot. for Summ. J. Ex. H at 17).

- Scarlett Martin ("Martin") told Monique that she had been a target of Sharp's sexual harassment. (Def.'s Mot. for Summ. J. Ex. H at 19). Martin reported that Sharp commented about her chest size and Sharp told her that she "need[ed] bungee cords to hold [her breasts] up." (Def.'s Mot. for Summ. J. Ex. H at 19). When Martin was choking on gum one day at work, Sharp responded with the comment that "I bet that's not the only thing you would like to choke on." (Def.'s Mot. for Summ. J. Ex. H at 19). Martin also recalled an incident where she was bent over going through a bin, and Sharp commented that "you are used to that position." (Def.'s Mot. for Summ. J. Ex. H at 19).

- Alexander Gibbs ("Gibbs") overheard comments that Sharp made to Cesler. In his statement, Gibbs recalled Sharp telling Cesler that she had "huge tits," a "big

4

ass," and "child-bearing hips." (Def.'s Mot. for Summ. J. Ex. H at 22). Gibbs also conveyed a comment about Cesler looking good "on her knees, looking up while she gives head." (Def.'s Mot. for Summ. J. Ex. H at 22). Gibbs also referenced an incident in which Sharp "repeatedly tried to attach a post-it note to Chloe's butt without her noticing and made jacking off motions when she would turn away or bend over." (Def.'s Mot. for Summ. J. Ex. H at 22). In addition, Gibbs noted that Sharp would "pretend[] to, 'slap that ass' when she would lean over to either pick up a form or speak with a client." (Def.'s Mot. for Summ. J. Ex. H at 22).

As a result of its investigation, Best Buy determined that Sharp's conduct violated its sexual harassment policy. (Crossland Decl. ¶ 9). On July 26, 2013, Thomas Crossland, the store's General Manager, terminated Sharp's employment. (Crossland Decl. ¶ 9; Sharp Dep. 44:13-14).

Sharp filed this lawsuit alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101-12117; and KRS 207.150 and KRS 207.170, which are provisions of Kentucky Equal Opportunities Act ("KEOA"). (Compl. ¶¶ 17-22, DN 1). The deadline for discovery has passed, and Best Buy has moved for summary judgment. (Def.'s Mot. for Summ. J., DN 17). Sharp did not respond to the motion.[2]

---

[2] Initially, Sharp was represented by counsel. His counsel has since withdrawn from this case, and Sharp did not retain substitute counsel. (Order Granting Mot. to Withdraw, DN 15). After the time period to file a response to motion for summary judgment had passed without Plaintiff having filed a response, the Court directed Sharp to file a response within 21 days. (Order, DN 20). No response was filed.

5

## II. JURISDICTION

This Court has subject-matter jurisdiction of Sharp's ADA claim pursuant to 28 U.S.C. § 1331. The Court also has supplemental jurisdiction over Plaintiff's pendent state law claims. *See* 28 U.S.C. § 1367.

## III. STANDARD OF REVIEW

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of any material fact that would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the non-moving party must the produce specific evidence proving the existence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual issue exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. DISCUSSION

In its motion, Best Buy argues that summary judgment is warranted on all of Plaintiff's claims. Each claim is separately addressed below.

### A. ADA/KEOA

In the Complaint, Sharp asserts that Best Buy terminated him because of his disability in violation of the federal and state law.[3] (Compl. ¶¶ 17-19, 21). In addition, Sharp alleges that Best Buy failed to accommodate his disability and retaliated against him when he reported Best Buy's failure to provide reasonable accommodations. (Compl. ¶¶ 11-12, 18, 20).

#### 1. *Best Buy did not terminate Sharp on the basis of disability, history of a disability, or being regarded as being disabled in violation of the ADA or KEOA.*

Under the ADA, an employer cannot discriminate ""against a qualified individual on the basis of disability in regard to . . . discharge of employees, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

To prove a claim of disability discrimination, a plaintiff may rely upon direct or circumstantial evidence. *See Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003). In the absence of direct evidence—which does not exist in this case—a plaintiff may rely upon circumstantial evidence to prove a claim based upon the burden-shifting articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, Sharp bears the initial burden of proving a *prima facie* case of disability discrimination. *See Demyanovich v. Cadon Plating & Coatings, LLC*, 747 F.3d 419, 433 (6th Cir. 2014). If he meets that burden, Best Buy must prove a legitimate, nondiscriminatory reason for terminating Sharp's employment. *See Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 310 (6th Cir. 2000)

---

[3] Kentucky courts have interpreted Kentucky discrimination laws consistently with federal law. *See Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003).

(citation omitted). Assuming Best Buy meets its burden, Sharp has the ultimate burden of proving pretext. *See id.*

### a. Sharp failed to prove a *prima facie* case of disability discrimination.

To meet his initial burden, Sharp had to prove a *prima facie* case of disability discrimination. As the Sixth Circuit has held:

> To make out a *prima facie* case of employment discrimination through indirect evidence under Title I, a plaintiff must show that "1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) . . . the disabled individual was replaced."

*Whitfield v. Tennessee*, 639 F.3d 253, 258-59 (6th Cir. 2011) (citation omitted).

To establish that he has a disability, Sharp had to prove that he has "a physical or mental impairment that substantially limits one or more major life activities . . . ." 42 U.S.C. § 12102(2)(A). The applicable regulations explain that the term "substantially limits" should be broadly construed and what it means in the context of a disability:

> It substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section.

29 C.F.R. § 1630.2(j)(i), (ii). Under the applicable regulations, the term "major life activities" includes activities like "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working . . . ." 29 C.F.R. § 1630.2(i)(i). *See also McPherson v. Fed. Express Corp.*, 241 F. App'x 277, 283 (6th Cir. 2007) ("[T]he mere fact that McPherson has suffered from these maladies does not mean he

was "substantially limited" in the "major life activity" of seeing. The record does not demonstrate and McPherson does not argue that he was unable to see relative to how well the general population can see, or that he was "[s]ignificantly restricted as to the condition, manner or duration under which" he could see "as compared to the condition, manner, or duration under which the average person in the general population can." (citation omitted)).

In its motion, Best Buy argues that Sharp has failed to prove that he has a disability. While acknowledging his diagnosis of narcolepsy, Best Buy maintains that Sharp failed to prove that he suffers from a physical or mental impairment that substantially limits a major life activity. (Def.'s Memo. in Support of Mot. for Summ. J. 24-25). The Court agrees. While Sharp did ask for and receive a regular work shift, the record is otherwise devoid of proof as to any physical or mental impairment that substantially limited a major life activity.[4]

Sharp has also failed to present any evidence as to the last prong relating to any replacement Best Buy may have hired after his termination. Accordingly, he cannot meet his initial burden of proving a *prima facie* case, which warrants the entry of summary judgment in Best Buy's favor.

---

[4] Best Buy acknowledges that Sharp presented a doctor's note requesting that he be placed on a "fairly stable work shift" due to his narcolepsy. (Def.'s Mem. in Support of Mot. for Summ. J. 26, DN 17-1). In arguing that Sharp failed to prove a *prima facie* case, Best Buy states that "Plaintiff admits that none of the coworkers involved in reporting his sexual harassment activities, which caused his termination, had knowledge of any disability. Consequently, Plaintiff cannot establish the fourth element of his *prima face* case; namely, that his employer had knowledge of his alleged disability." (Def.'s Mem. in Support of Mot. for Summ. J. 26, DN 17-1). Contrary to Best Buy's argument, the co-workers reporting the sexual harassment were not the decisionmakers and Best Buy concedes that it had been made aware of Sharp's diagnosis of narcolepsy prior to his termination.

      **b.    Best Buy presented evidence of a legitimate, nondiscriminatory reason for Sharp's termination.**

Once a plaintiff has made a *prima facie* case, "the burden then shifts to the defendant to set forth a legitimate, nondiscriminatory reason for the adverse employment action it took against the plaintiff." *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 883 (6th Cir. 1996) (citing *McDonnell Douglas*, 411 U.S. at 802). Best Buy has stated that Sharp was terminated due to sexual harassment in violation of its zero-tolerance sexual harassment policy. As discussed previously, it developed evidence in the record reflecting that Best Buy interviewed numerous co-workers who corroborated Cesler's initial report and brought to light additional instances of sexual harassment by Sharp. Thus, Best Buy has met its burden.

      **c.    Sharp did not prove pretext by a preponderance of the evidence.**

Finally, Sharp "must then prove 'by a preponderance of the evidence' that the defendant's proffered reasons were not its true reasons, but were merely a pretext for illegal discrimination." *Kocsis*, 97 F.3d at 883 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)). In particular, "a plaintiff must produce enough evidence that a jury could reasonably reject the employer's explanation for its decisions." *Id.* (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994)).

While Sharp has not responded to the motion, the Court has reviewed the evidence in the record and concludes that there is a lack of evidence to prove pretext. While Sharp testified that he disagrees with the allegations of sexual harassments, the unrefuted evidence is that Cesler's allegations were corroborated by co-workers and that Cesler's complaint was the impetus for the investigation into Sharp's workplace misconduct. (Sharp Dep. 154:12-155:1; Crossland Decl. ¶¶ 5-9).

10

While Sharp may wish for this Court to second-guess Best Buy's decision to terminate his employment, courts "cannot sit as a super-personnel department," and "it is inappropriate for the judiciary to substitute its judgment for that of management." *Saulsberry v. Fed. Express Corp.*, 552 F. App'x 424, 430 (6th Cir. 2014) (citing *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 960 (8th Cir. 1995) (internal quotation marks omitted)). Accordingly, Sharp's denial that he engaged in sexual harassment alone is insufficient proof to meet his burden of proving pretext. *See Blizzard v. Marion Technical Coll.*, 598 F.3d 275, 286 (6th Cir. 2012) ("Blizzard's 'disagreement with [MTC's] honest business judgment regarding [her] work does not create sufficient evidence of pretext in the fact of the substantial evidence that [MTC] had a reasonable basis to be dissatisfied.'" (alterations in original) (quoting *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1116 (6th Cir. 2001)). Likewise, he cannot rely upon speculation of an ulterior motive to prove pretext.[5] *See Hagan v. Warner/Elektra/Atl. Corp.*, 92 F. App'x 264, 269 (6th Cir. 2004) ("We find speculation insufficient to establish pretext.").

For these reasons, Sharp has failed to meet both his burden to prove a *prima facie* case and prove pretext, and Best Buy articulated a legitimate, nondiscriminatory reason for his termination. Accordingly, the Court will grant summary judgment on this claim.

### 2. *Plaintiff has not proven that Best Buy has failed to provide reasonable accommodations.*

Best Buy also argues that it is entitled to summary judgment on Sharp's failure to accommodate claim. To prevail on this claim, Plaintiff has to prove "that (1) he has a disability;

---

[5] There is nothing in the record to undermine Best Buy's honest belief that Sharp violated its sexual harassment policy. *See Banks v. Bosch Rexroth Corp.*, 15 F. Supp. 3d 681, 695 (E.D. Ky. 2014) ("As long as an employer has an honest belief that its reason for termination is legitimate, the employee cannot maintain that it was pretextual simply because it was wrong." (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998))). Indeed, the conduct described by Cesler and others appears to be blatantly sexually offensive.

11

(2) that he is 'otherwise qualified' for the job; and (3) that the defendant refused to make a reasonable accommodation for his disability . . . ." *Smith v. Ameritech*, 129 F.3d 857, 866 (6th Cir. 1997) (citation omitted). With respect to failure to accommodate claims, courts have analyzed such claims as follows:

> An employee has the initial burden of proposing an accommodation and showing that it is "objectively reasonable." Then, the burden shifts to the employer to show that the accommodation "would impose an undue hardship." Determination of the appropriate reasonable accommodation may necessitate that the employer initiate an "informal, interactive process" with the employee. The parties must participate in good faith; however, the employer is not required to propose a counter accommodation.

*Turner v. City of Paris*, No. 5:11-CV-351-KSF, 2012 WL 6706164, at *2 (E.D. Ky. Dec. 26, 2012) (internal citations omitted) (citation omitted). Plaintiff, however, cannot prove all of the elements of his claim.

As outlined above, Sharp has failed to prove that he has a disability. In addition, Sharp has failed to identify any specific reasonable accommodation that he requested and prove that Best Buy failed to provide it. While he did request a regular work schedule, the record reflects that Best Buy provided that accommodation. In his deposition, Sharp testified:

> Q.   Well, Best Buy didn't one time on that 6:30 thing but otherwise you've written five documents that said they did accommodate you. There was a screw up one time where they scheduled you at 6:30, I remember that, which they fixed because you called in on it, but otherwise other than that one day, everybody for the last five, seven years, has provided you with accommodations; is that correct?
> A.   Correct.

(Sharp Dep. 73:8-16). Thus, by Sharp's own admission, Best Buy provided the accommodation he requested. As a result, Sharp cannot prove a *prima facie* case.

For these reasons, Sharp failed to prove that Best Buy did not provide reasonable accommodations as required by federal or state law. The Court will grant summary judgment on this claim.

### B. **Plaintiff failed to prove a claim of retaliation in violation of the ADA or KEOA.**

Best Buy also seeks dismissal of Sharp's retaliation claim. To prevail on this claim, Sharp must prove that "(1) [he] engaged in [a] protected activity; (2) [the employer] knew that [he] engaged in the protected activity; (3) [the employer] subsequently took an adverse employment action against [the plaintiff]; and (4) the adverse action was causally related to the protected activity." *Ladd v. Grand Trunk W. R.R.*, 552 F.3d 495, 502 (6th Cir. 2009) (internal citations omitted) (citation omitted).

Based upon the record, Sharp can prove the first three elements of his claim but cannot prove causation. "To establish the causal connection required in the fourth prong, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action." *Barlow v. Triden Constr. Supply, Inc.*, No. 3:01CV-271-H, 2002 WL 927422, at *6 (W.D. Ky. Apr. 26, 2002) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)). *See also Hollowell v. Mich. Consol. Gas Co.*, 18 F. App'x 332, 342 (6th Cir. 2001) ("To establish a [causal] connection between the protected activity and the adverse employment action, the plaintiff must show that his participation in the protected activity was a "significant factor" in the employer's adverse employment action, not merely that there was a causal link between the two." (citation omitted)).

In September 2012, Sharp filed a charge with the Equal Employment Opportunity Commission ("EEOC"). (Sharp Dep. 81:19-82:9; Def.'s Mot. for Summ. J., Ex. D, DN 17-5). Best Buy terminated his employment on July 26, 2013, following Cesler's report of sexual harassment on June 13, 2013. Thus, the sequence of events reflects that more than 9 months had passed between the filing of the EEOC charge and his termination, which is insufficient for the

13

purpose of establishing causation through temporal proximity alone. *See Underhill v. Caudill*, 186 F. Supp. 2d 736, 741 (W.D. Ky. 2001) (concluding that a period of four months is insufficient to establish temporal proximity). As the Sixth Circuit has held, "temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence." *Arendale v. City of Memphis*, 519 F.3d 587, 606 (6th Cir. 2008) (internal quotation marks omitted) (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)). Thus, Sharp cannot rely upon temporal proximity to prove his retaliation claim.

As Sharp conceded during his deposition, conduct constituting sexual harassment was a violation of Best Buy's personnel policies. (Sharp Dep. 45:11-15). In addition to denying the allegations, Sharp testified that he believed that his co-workers fabricated the allegations of sexual harassment against him because they blamed him for getting a co-worker fired. (Sharp Dep. 77:9-24). Even if Sharp's suspicion were true, he cannot defeat Best Buy's motion for summary judgment "as long as [his] employer [had] an honest belief in its proffered nondiscriminatory reason." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598 (6th Cir. 2007) (quoting *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (internal quotation marks omitted)). As the Sixth Circuit has stated:

> The key inquiry in assessing whether an employer holds such an honest belief is "whether the employer made a reasonably informed and considered decision before taking" the complained-of action. An employer has an honest belief in its rationale when it "reasonably relied on the particularized facts that were before it at the time the decision was made." "[W]e do not require that the decisional process used by the employer be optimal or that it left no stone unturned."

*Id.* at 598-99 (citations omitted). During Best Buy's investigation, various co-workers corroborated Cesler's initial report of Sharp's sexual harassment and brought to light additional instances of similar inappropriate conduct directed towards other employees. Thus, there was

sufficient evidence that Best Buy's determination to terminate his employment was reasonably informed and was a considered decision.

Because Sharp has failed to prove that the filing of his EEOC charge was a "significant factor" in his termination, he failed to prove a causal link required for his *prima facie* case.[6] Accordingly, the Court will grant summary judgment in Best Buy's favor on Sharp's retaliation claim.

### V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Best Buy Co., Inc.'s Motion for Summary Judgment (DN 17) is **GRANTED**.

Greg N. Stivers, Judge
United States District Court

April 10, 2015

cc: counsel of record
Plaintiff, *pro se*

---

[6] As outlined above, Best Buy has also met its burden to prove a legitimate, nondiscriminatory reason for Sharp's termination and Sharp failed to prove pretext, which defeats this claim. *See Ladd*, 552 F.3d at 502 (citation omitted).

15